Milton W. Leggett and Lucille S. Leggett v. Commissioner.
Milton W. Leggett & Lucille S. Leggett v. Commissioner
Docket No. 19615.
United States Tax Court
1949 Tax Ct. Memo LEXIS 99; 8 T.C.M. (CCH) 718; T.C.M. (RIA) 49196; August 25, 1949
*99 Robert G. MacAlister, Esq., 700 Jones Law Bldg., Pittsburgh, Pa., for the petitioners. Louis A. Boxleitner, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax for 1944 and 1945 in the amounts of $292.40 and $361.05. The only issue for decision is whether stock of Construction Loan & Mortgage Company was worthless at the beginning of 1944. Findings of Fact The petitioners are husband and wife who filed joint returns for 1944 and 1945 with the collector of internal revenue for the twenty-third district of Pennsylvania. Milton purchased by subscription 60 shares of Construction Loan & Mortgage Company (hereafter called Construction) stock for $6,000, 20 in 1926 and 40 in 1928. The only amount he ever received as a capital distribution by the corporation was $312 received on July 20, 1944, as a first and final liquidating dividend. He reported on their 1944 return a capital loss of $5,688, reduced it by 50 per cent because it was a long term loss, but claimed only the maximum allowance of $1,000 as a deduction for 1944. He claimed another $1,000 on the 1945 return as a carry-over. The *100 Commissioner, in determining the deficiencies, disallowed the deductions claimed with the explanation that the stock had become worthless in 1938. Construction was organized under the laws of Pennsylvania in 1926. Its principal business was the lending of money, usually for about six months, on construction mortgages to enable the borrowers to enable the borrowers to erect new buildings. The borrowers were expected to obtain permanent financing when the construction was completed and pay off the construction mortgage. Construction obtain money by borrowing from banks, using its construction mortgages as collateral. The borrowers from Construction were unable to obtain permanent loans beginning in 1929 and by 1932 Construction had had to assign to its creditor banks all of its interests in the mortgages which it had used as collateral, although still liable on its notes to the banks. Construction ceased its regular operations prior to 1935 and never resumed them. The record does not show whether or not Construction had any outstanding unpaid indebtedness on July 20, 1944, when all of its remaining assets were distributed to its stockholders. The only outstanding stock of Construction *101 consisted of 1,742 shares of one class. That stock, of which Milton owned 60 shares, became worthless prior to January 1, 1944. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: About the only evidence tending to support the petitioner's contention that the stock did not become worthless prior to 1944 is the fact that $9,000 was accumulated over a period of several years and distributed in 1944. But it appears that officers and employees waived their rights to salaries and wages in order to permit that distribution to the stockholders. Also, the record is not clear as to whether one bank debt, amounting to much more than $9,000, was cleared to permit a legal distribution to stockholders. Construction ceased operating in about 1933 and gave up all thought of resuming its business of lending money. It was hopelessly insolvent after 1935. A statement as of May 1, 1941, showed assets having a book value of $114,422.75 and an appraised fair market value of $87,586.72 against debts of $191,881.23. Most of the assets were pledged, assigned, and sold prior to 1940, leaving large debts still due from Construction. The value of the unpledged assets *102 was much too small to justify any reasonable hope or expectation that they would ever increase in value sufficiently to pay the debts or any substantial part of them. The president and the treasurer, acting without express authority, had succeeded by 1942 in compromising or purchasing for a part of the amount due, some of the larger debts and the taxes. They used for that purpose the proceeds of sales of a few of the unpledged assets. They sold all of the unpledged real estate between the Spring of 1941 and July, 1944. How they managed to save the $9,000 for the stockholders is not at all clear. Those two men, who were two of three apparently most familiar with the affairs of Construction, executed affidavits in 1938 in which they expressed their opinions that the stock was worthless in 1936. The evidence of record justifies their beliefs and leaves nothing upon which this Court, looking most favorably upon the petitioner's case, could base a belief that there was some potential or possible future liquidating value in the stock during the period 1935 through 1940. The petitioner has failed to show that the Commissioner erred in holding that the stock became worthless prior to 1944. *103 Decision will be entered for the respondent.